# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURU DENIM, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>L.A. IDOL FASHION, INC., a Business Entity of Unknown Status, RECCO JEANS, a Business Entity of Unknown Status, ANDY HSI-AN WEI, an individual, and Does 1-10, Inclusive,<br><br>Defendants. | Case No.: CV 08-1798-GW(RCx)<br><br>**ORDER RE CONTEMPT AND SANCTIONS AGAINST DEFENDANT L.A. IDOL FASHION, INC.** |

/ / /

The Motion of Guru Denim, Inc. ("Guru") for Contempt and Sanctions Against Defendant LA Idol Fashion, Inc. ("Defendant") came before this Court on December 12, 2011, alleging that Defendant was in contempt of this Court's June 23, 2009 Permanent Injunction Order. After full consideration of Guru's Motion and accompanying Memorandum of Points and Authorities, the Declarations and Exhibits attached in support thereof, the Opposition papers, and the arguments of the parties, the Court found and concluded that Defendant is in contempt of the June 23, 2009 Permanent Injunction entered by the Order of this Court (Document #120). Therefore, Guru's Motion is hereby GRANTED in part. *Id.*

A contempt proceeding's purpose is to "uphold the power of the court, and also to secure to suitors therein the rights by it awarded." *Penfield Co. of California v. S.E.C.,* 330 U.S. 585, 594 (1947). "If a party can make himself a judge of the validity of Orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911). As a result, "[t]here could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce order and the punish acts of disobedience." *Id.* Accordingly, "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as…[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C.A. §401(3).

Furthermore, an injunction entered pursuant to 15 U.S.C. §1116(a) "may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted... ." "A party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997). As such, "[a]n infringer must keep a fair distance from the 'margin line.'" *Id.*, at 1323

(9th Cir. 1997) (*citing Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963)). "When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d), or a willful violation under section 43(c), shall have been established…the plaintiff shall be entitled…to recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove Defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for a sum above any amount found as actual damages, not exceeding three times such amount. If the Court shall find the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find shall constitute compensation and not a penalty." 15 U.S.C. 1117(a)

Pursuant to the granting of this Motion and for the purposes of assessing an appropriate penalty for Defendant's contempt of this Court's lawful Order, Defendant was ordered to produce documents by January 11, 2012, evidencing the extent of Defendant's contemptuous sales, including documents evidencing the source of the contemptuous items, the costs Defendant incurred in the purchase, production and/or sale of the contemptuous items, the volume of contemptuous items purchased, the volume of contemptuous items sold, the gross receipts Defendant received from its contemptuous sales and the net profits Defendant received from its contemptuous sales. (Document #120). The Court further requested that Plaintiff submit a declaration asserting its attorneys' fees and costs incurred in the bringing of the Motion for Contempt. *Id.* On December 14, 2011, Plaintiff filed a declaration with the Court requesting $4,261.96 in such fees and costs. (Document #121).

A Status Conference was held January 12, 2012, concerning the ordered document production and the further determination of sanctions against Defendant

for its contempt of the June 23, 2009 Order. Defendant failed to appear on time for the Status Conference, and failed to produce any documents pursuant to the Court's December 12, 2011 Order. The Status Conference was continued to January 19, 2012. (Document #127).

On January 19, 2012, Defendant and Plaintiff appeared for the continued Status Conference. The Court was informed that Defendant had produced only a summary accounting meant to evidence the extent of its contemptuous activity. (Document #129). Defendant represented that it needed time to produce the ordered source documents evidencing receipts and sales. The Court ordered Defendant to produce these documents within 48 hours. The Court requested that Plaintiff prepare a [Proposed] Order incorporating the Court's ruling issued on December 12, 2011, and to submit it for approval by January 25, 2012. (Document #128).

Defendant did not produce documents to Plaintiff until four days later, at approximately 7:00 P.M., on January 23, 2012. (Document #129). The documents produced consisted of one purported purchase order placed by Defendant with an unidentified vendor. *Id.* A comparison of the summary accounting with the produced purchase order reveals several inconsistencies. *Id.*

First, the summary statement lists the first purported sale of infringing product as December 28, 2010. (Document #129). However, the purchase order states that the infringing items were not ordered by Defendant until August 5, 2011. *Id.* Thus, Defendant's document illogically represent that they sold merchandise they had yet to purchase.

Second, the last purported sale of infringing product is listed on the summary statements as December 8, 2011. *Id.* However, the purchase order states that the infringing product was not delivered to Defendant until December 22, 2011. Thus, according to Defendant's purchase order, Defendant took delivery of infringing product after their last purported sale on December 8, 2011, and after the Court granted Plaintiff's Motion on December 12, 2011.

Third, the purchase order indicates that the quantity of contemptuous items obtained from the unidentified supplier is at least 1,600 units. *Id.* The summary documents provided by Defendant indicate that a total of 1,555 units were sold. *Id.* Assuming, *arguendo* that the aforementioned inconsistence in dates can be set aside, then a total of at least 45 unaccounted for items remain in Defendant's possession or control. However, Defendant's documents indicate that they took delivery of 1,600 units on December 22, 2011, but that their last sale was December 8, 2011. Accordingly, 1,600 infringing items remain in Defendant's possession.

Further, Defendant has produced none of the Court ordered source documents for each line item (*i.e.* the listed invoices) identified in the accounting summary, which is necessary to assess the veracity of Defendant's purported summary. However, according to Defendant's summary documents, Defendant purports to have received from the sale of its infringing and contemptuous items $31,865.50. *Id.*

THEREFORE, having found Defendant in contempt of this Court's June 23, 2009 Order, given Defendant's failure to provide all of the documents Ordered produced and at the times specified in the Court's December 12, 2011 and January 19, 2012 Order, given Defendant's failure to arrive on time for the January 12, 2012 Status Conference, and in consideration of all the foregoing the Court finds that the following sanctions and remedies are reasonable and HEREBY ORDERS THAT:

1. Defendant is sanctioned in the form of an award to Guru in the amount of $31,865.50 representing Defendant's sales revenues from the infringing and contemptuous items. Defendant is to remit this amount to counsel for Guru by no later than March 1, 2012.

2. Defendant is sanctioned in the form of an award to Guru of reasonable attorneys' fees and costs in the amount of $4,261.96 associated with the bringing of this motion. Defendant is to remit this amount to counsel for Guru by no later than March 1, 2012.

3. Defendant shall forfeit all materials within its possession or control which

    violate Guru's exclusive intellectual property rights, including the pockets with the designs found by this Court to be contemptuous of the June 23, 2009 Order. Defendant is to forfeit these items to counsel for Guru by no later than February 15, 2012.

4. Defendant is ordered to henceforth comply with the June 23, 2009 Order in its entirety.

**IT IS SO ORDERED.**

DATE:  January 25, 2012

                                                              _____
                                                              Honorable George H. Wu
                                                              DISTRICT COURT JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA